**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE: ) | |
| ) | CASE No.       20-50785 (JAM) |
| JOSEPH A. FARRELL AND ) | |
| HEATHER FARRELL, ) | |
| ) | CHAPTER       7 |
| DEBTORS. ) | |
| ) | RE: ECF No.   21 |

**Appearances**

George I. Roumeliotis                                           *Chapter 7 Trustee*
Roumeliotis Law Group, P.C.
157 Church Street, 19th Floor
New Haven, CT 06510

Scott M. Charmoy                                                *Attorney for the Debtor*
Charmoy & Charmoy
1465 Post Road East
Suite 100
Westport, CT 06880

**MEMORANDUM OF DECISION AND ORDER GRANTING MOTION**
**TO COMPROMISE PURSUANT TO FED. R. BANKR. P. 9019**

**I.      BACKGROUND**

On September 16, 2020, Joseph A. Farrell and Heather Farrell (the "Debtors") filed a

Chapter 7 petition commencing this bankruptcy case.  Pursuant to 11 U.S.C. § 341, a Meeting of

Creditors was held on October 16, 2020 during which the Debtors' testimony was taken.  The

Debtor Joseph A. Farrell testified at the 341 Meeting that he had an interest in a Chase Bank

account jointly held with the Debtors' 17-year-old son (the "Account").  As of the petition date,

the Account had a balance of $8,512.70.  The Debtor Heather Farrell does not have an interest in

the Account.  The funds in the Account were deposited over an extended period of time from

gifts their son received and from wages he earned from part-time employment.  The Debtors

considered the funds in the Account to be their son's property. After reviewing the Account statements and noting that Chase Bank named the Account "High School Checking," the Trustee concedes that the funds in the Account did not come from the Debtors, other than perhaps occasional birthday or holiday gifts.

Nonetheless, the Trustee contends the funds in the Account are property of the estate of Joseph A. Farrell. The Trustee asserts that because the Account is in the name of Joseph A. Farrell and his son, all of the funds in the Account are property of Joseph Farrell's bankruptcy estate. In support of his contention, the Chapter 7 Trustee cites to the Connecticut Supreme Court case of *Fleet Bank v. Carillo*, 240 Conn. 343 (1997). Among other things, *Carillo* analyzed Conn. Gen. Stat. § 52-367b and held that a judgment creditor of one account coholder has the statutory right to enforce a bank execution against all of the funds in the account, regardless of which coholder contributed the funds into the account.

On December 21, 2020, the Chapter 7 Trustee filed a Motion to Compromise in connection with the funds in the Account (the "Motion to Compromise," ECF No. 21). A hearing on the Motion to Compromise was held on January 19, 2021. At the conclusion of the hearing, the Court took the matter under advisement. As set forth below, the Court concludes that the Trustee has authority under the Bankruptcy Code and Connecticut law to claim that all of the funds in the Account are property of the estate of Joseph A. Farrell regardless of whether he contributed all of the funds into the Account. Although *Carillo* appears to require this result, the result raises concerns about the state of the law on this issue.

## II.   DISCUSSION

### A.   The Standard for Approving a Compromise.

Fed. R. Bankr. P. 9019(a) provides that on motion by the Trustee and after notice and a hearing, the court may approve a compromise.  In *In re Iridium Operating, LLC*, the United States Court of Appeals for the Second Circuit instructed courts to consider the following factors in deciding whether to approve a compromise or settlement pursuant to Rule 9019:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits;
> (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;
> (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement;"
> (4) whether other parties in interest support the settlement;
> (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement;
> (6) "the nature and breadth of releases to be obtained by officers and directors;" and
> (7) "the extent to which the settlement is the product of arm's length bargaining."

*In re Iridium Operating, LLC*, 478 F.3d 452, 462 (2d Cir. 2007).

Here, no creditors or parties in interest, other than the Chapter 7 Trustee and counsel for the Debtors, appeared at the hearing on the Motion to Compromise or opposed the Motion to Compromise.  Therefore, the factors the Court must examine are the balance between the litigation's possibility of success and the compromise's future benefits, the likelihood of complex and protracted litigation, and the extent to which the compromise is a product of arm's length bargaining.

### B.   The Possibility of Success, the Compromise's Future Benefits, Likelihood of Complex and Protracted Litigation, and Extent of Arm's Length Bargaining.

The Trustee's possibility of success in this case hinges on whether the Trustee has authority under the Bankruptcy Code and Connecticut law to execute against the Account.  There

is little question that a Trustee has authority under the Bankruptcy Code to exercise the rights

and powers of creditors that had extended credit to the Debtor at the time of the commencement

of the case.  Pursuant to 11 U.S.C. § 544(a), the Trustee has the "rights and powers of [. . .] a

creditor that extends credit to the debtor at the time of the commencement of the case, and

obtains, at such time and with respect to such credit, an execution against the debtor that is

returned unsatisfied at such time, whether or not such a creditor exists."

Section 544(a), the "strong-arm" provision of the Bankruptcy Code, advances the

important bankruptcy policy of facilitating the orderly recovery, liquidation, and equitable

distribution among the creditors of all of the assets and remedies that would have been available

to satisfy the creditor's judgments outside of bankruptcy.  *See* Richard J. Mason and Patricia K.

Smoots, *When Do the Creditors' Shoes Fit?: A Bankruptcy Estate's Power to Assert the Rights*

*of a Hypothetical Judgment Creditor*, 91 AM. BANKR. L. J. 435, 436-37 (Summer 2017).

"Whenever applicable non-bankruptcy law affords a right of action or a collection remedy that

would be generally available to Judgment Lien Creditors, § 544(a) should be construed to afford

the estate representative standing to assert the claim and take advantage of the remedy."  *Id.* at

446.  Absent a clearly expressed contrary federal policy, a bankruptcy court should ensure that

the same legal rights and protections apply in bankruptcy as apply outside of bankruptcy.  *See*

*Butner v. United States*, 440 U.S. 48, 55-56 (1979).  "Uniform treatment of property interests by

both state and federal courts within a State serves to reduce uncertainty, to discourage forum

shopping, and to prevent a party from receiving a windfall merely by reason of the happenstance

of bankruptcy."  91 AM. BANKR. L. J. at 545.

The Trustee also has the rights and powers of a judgment creditor under Connecticut law.

Conn. Gen. Stat. § 52-367b authorizes a judgment creditor to serve an execution against any

nonexempt funds in a bank account in which there are "debts due from any financial institution to a judgment debtor who is a natural person." However, Conn. Gen. Stat. § 52-367b only addresses a situation where a judgment creditor executes against a single judgment debtor (a sole owner of an account) as opposed to a situation where a judgment creditor of one coholder executes against the entire joint account. Because Conn. Gen. Stat. § 52-367b does not address the rights of coholders when an execution is made against a joint account by one of the coholder's judgment creditors, the Court in *Carillo* turned to Conn. Gen. Stat. § 36a-290(a) to fill that gap. Conn. Gen. Stat. § 36a-290(a), commonly referred to as a "bank protection statute," provides in relevant part as follows:

> When a deposit account has been established at any bank, or a share account has been established at any Connecticut credit union or federal credit union, in the names of two or more natural persons and under such terms as to be paid to any one of them, [. . .], such account is deemed a joint account, and any part or all of the balance of such account, including any and all subsequent deposits or additions made thereto, may be paid to any of such persons during the lifetime of all of them [. . .]. Any such payment constitutes a valid and sufficient release and discharge of such bank, Connecticut credit union or federal credit union, or its successor, as to all payments so made.

Conn. Gen. Stat. § 36a-290(a).

The issue of the ownership of deposits in a joint account addressed in Conn. Gen. Stat. § 36a-290(a) provided the *Carillo* Court with the link necessary to hold that a judgment creditor could execute upon the entire balance in a joint account, even when the debt was owed only by one of the coholders of the joint account. The Court held that because Conn. Gen. Stat. § 36a-290 authorized a bank to release the entire balance of a joint account to any coholder who so demands, each coholder possessed sufficient interest in a joint account to warrant characterizing all deposits as a "debt due" to each coholder. *See id.* at 349-50. Therefore, because all deposits qualified as a "debt due" to each coholder, a third-party creditor could execute against the entire balance of the joint account pursuant to Conn. Gen. Stat. § 52-367b. *Id.*

The dissent in *Carillo* highlights the potential drawbacks of the majority's interpretation of Conn. Gen. Stat. § 36a-290 and Conn. Gen. Stat. § 52-367b. Notably, the dissent cautions that the majority's holding would deprive innocent persons of their interests in joint accounts by making the entire balance in the accounts available for seizure by creditors of an account coholder. *Id.* at 356. The dissent contains an example of such a cautionary tale--a joint savings account maintained by a parent and child, where all the deposits made to the account belonged to the parent (a common estate planning technique), but where all the deposits could now be accessed to satisfy the debts of the child. *Id.*

Here, instead of satisfying the debts of a child who is a joint account holder with a parent, an innocent and unfortunate 17-year-old is being deprived of what all concede are deposits of gifts to him and his part-time wages to partially satisfy $119,402.19 in claims against the Debtors. At best, the result of executing on the Account will provide a dividend of 5.4 % to the Debtors' unsecured creditors. Such a result makes little sense, but the existing law in Connecticut mandates this result. The Debtors' counsel cites to *In re Riemann*, No. 09-0226, 2009 WL 3254486 (Bankr. D. Conn. Oct. 7, 2009), for the proposition that a non-debtor co-owner could preserve funds that can be demonstrated to belong to the co-owner. Because the facts of *Riemann* are not the same as the facts in this case, *Riemann* does not change the result.

While the debts of children are often undertaken or satisfied by their parents, one seldom expects that the debts of parents will be undertaken or satisfied by their children. The remedy to avoid the harsh result *Carillo* requires in this case, and with respect to all joint accounts, lies with the Connecticut Legislature. Existing statutes could be amended or new legislation could be enacted to adopt the view of the majority of states that require courts to determine the "reality of ownership" of the funds in a joint account, such as through tracing which depositor holds

6

equitable title to the money that is in the account. *See* Martha A. Churchill, *Joint Bank Account as Subject to Attachment, Garnishment, or Execution by Creditor of One Joint Depositor*, 86 A.L.R.5th 527, pt. I, § 2(a) (2001). This would avoid the creditor of one depositor "wrongfully" taking property belonging to another depositor. *Id.* Unfortunately, the ability to fashion that remedy is in the hands of the Connecticut Legislature and not this Court. Because *Carillo* supports the Trustee's ability to execute on all of the funds in the Account, the "possibility of success" factor weighs in favor of approving the compromise.

The remaining *Iridium* factors also weigh in favor of approving the compromise. The compromise's future benefits will enable the Debtors to obtain a fresh start, which may inure to the benefit of their son. If this matter is not compromised, the estate would incur unnecessary expense, inconvenience, and delay, and may have difficulty collecting on any judgment. The "paramount interests of creditors" weighs in favor of approving a possible 5.4 % recovery and is not opposed by any creditors. The Chapter 7 Trustee and Debtors' counsel are experienced in bankruptcy, both support the compromise, and this Court is familiar with the facts and circumstances of the Debtors' case and the Motion to Compromise. The Court also finds that the compromise is the product of arm's length bargaining between the Chapter 7 Trustee and Debtors' counsel as evidenced by representations of negotiations contained in the Motion to Compromise.

## III.   CONCLUSION

For the reasons set forth above, the Court finds that the Motion to Compromise is fair and reasonable and complies with the requirements of the Bankruptcy Code and applicable non-bankruptcy law. Accordingly, it is hereby

**ORDERED:** Pursuant to Fed. R. Bankr. P. 9019, the Motion to Compromise, ECF No. 21, is GRANTED; and it is further

**ORDERED:** The Debtors shall pay $6,500.00 from the joint checking Account at Chase Bank to the Chapter 7 Trustee within fourteen (14) days of the entry of this Order.

Dated at Bridgeport, Connecticut this 12th day of February, 2021.

_Julie A. Manning_
Chief United States Bankruptcy Judge
District of Connecticut

8